J. A03043/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| J.D., | : | |
| | : | |
| | : | |
| Appellant | : | No. 1288 MDA 2016 |
| | : | |

Appeal from the Order Entered July 5, 2016
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 13335-2013

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:           **FILED APRIL 06, 2017**

Appellant, J.D. ("Father"), appeals from the July 5, 2016 Order which granted the Petition to Modify Custody filed by Appellee, E.L. ("Mother"), and awarded Mother primary physical custody of A.D. ("Child"). Upon careful review, we affirm.

The Child was born in November 2006. Mother and Father resided together for a short time after the Child's birth but separated when the Child was approximately seven months old. Mother returned to her hometown, over an hour away from Father. Mother retained primary physical custody and Father had weekend visitation. In November 2012, Luzerne County Children and Youth Agency filed a Dependency Petition alleging that Mother was fabricating sex abuse allegations against Father. The court held the

Dependency Petition in abeyance pending a Comprehensive Family Assessment, and dismissed the Petition after Mother and Father agreed that Father would have sole legal custody and primary physical custody of the Child. Mother progressed from supervised visitation with the Child to unsupervised weekend visitation on alternating weekends.

The parents currently both live in Pennsylvania, over an hour apart. Both parents are employed. Mother owns a home and lives with her 2-year-old son and Maternal Grandmother. Father has recently reconciled with his ex-wife. They own a home together where they live with their two daughters (ages 9 and 4) and Father's 15-year-old son who visits on weekends.

On October 13, 2015, Mother filed a Petition to Modify Custody seeking primary physical custody. On July 5, 2016, after an evidentiary hearing and an *in camera* discussion with the Child, the trial court granted the parents shared legal custody, granted Mother primary physical custody, and granted Father alternating weekend and Wednesday evening visitation.

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. The trial court erred in granting primary physical custody to [Mother] when it failed to consider all the factors or considered some of the factors not relevant under [23 Pa.C.S § 5328], misinterpreted factors 7, 8, 10 and failed to apply testimony to factor 12.

2. The trial court erred in granting primary custody to [Mother] when it improperly applied facts and testimony to the factors under [23 Pa.C.S. § 5328].

3. Did the trial court err as a matter of law and/or an [*sic*] abuse of discretion by granting primary physical custody of the minor [C]hild to [Mother], when the entire trial lasted less than 2 hours and evidence presented was insufficient to support a transfer of custody?

4. The trial court erred in granting primary custody to [Mother] when it failed to consider the relocation factors under [23 Pa.C.S. § 5337], as the transfer of custody would require a relocation of the [C]hild.

5. The trial court erred in granting primary custody to [Mother] when it failed to consider the past abuses of [Mother] in forcing the [C]hild to undergo unnecessary rape examinations and accusing [Father] of [a]buse.

6. The trial court erred in granting primary custody to [Mother] based on an assumption of future events.

7. The trial court erred in failing to allow [Father] to present evidence at trial.

Father's Brief at i-ii (reordered for ease of disposition).[1]

When reviewing child custody matters, our standard of review is well settled: "[o]ur paramount concern and the polestar of our analysis . . . is the best interests of the child. The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being."

---

[1] Father withdrew the following issue: "The trial court erred in granting [Mother] primary custody and allowing a relocation without [Mother] filing the required relocation petition, affidavits and counter affidavits as required under [23 Pa.C.S. § 5337]." Father's Brief at i, 29.

*Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (quotation and citation omitted).

This Court reviews a custody determination for an abuse of discretion. *In re K.D.,* 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.* (citation omitted).

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad:

> . . . we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. Further, on the issues of credibility and weight of the evidence, we defer to the findings [of] the trial judge. Additionally, appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record.

*Saintz, supra* at 512 (quotation and citation omitted).

The Child Custody Act ("the Custody Act"), 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. *E.D.*

*v. M.P.*, 33 A.3d 73, 77 (Pa. Super. 2011). The Custody Act requires a trial court to consider all of the § 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a).[2] A trial court must "delineate

_____

[2] 23 Pa.C.S. § 5328(a) provides:

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> (3) The parental duties performed by each party on behalf of the child.
> (4) The need for stability and continuity in the child's education, family life and community life.
> (5) The availability of extended family.
> (6) The child's sibling relationships.
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
> (11) The proximity of the residences of the parties.

the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D. v. S.A.R.**, 96 A.3d 396, 401 (Pa. Super. 2014); **see also** 23 Pa.C.S. § 5323(a) and (d).

As stated above, we review Father's arguments particularly recognizing that "we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **Saintz, supra** at 512.

Father's first three issues on appeal claim that the trial court did not properly evaluate the best interests factors enumerated in 23 Pa.C.S. § 5328 and there was not sufficient evidence presented to support a transfer of custody. Father's Brief at 5-6. We disagree.

The Custody Act requires that the court articulate the reasons for its custody decision on the record, in a written opinion, or in an order taking

---

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
(14) The history of drug or alcohol abuse of a party or member of a party's household.
(15) The mental and physical condition of a party or member of a party's household.
(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

into consideration the enumerated factors. *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *Id.*

In the instant case, after hearing evidence, the trial court considered all of the Section 5328 custody factors and determined that four of them were not relevant. *See* Trial Court Custody Opinion, filed 7/5/16, at 6. The trial court provided a written explanation regarding each of the remaining factors. *See id.* at 2-6. While the trial court found that a majority of the factors balanced equally between Mother and Father, the court found that Mother was more likely to encourage contact between Father and Child, Mother was more likely to perform parental duties, Mother was more likely to maintain a stable relationship that nurtures the Child's emotional needs, and Mother was more likely to attend to the Child's daily physical, emotional, developmental, educational, and special needs. *Id.*

A review of the record supports the trial court's conclusions. The trial court heard evidence that Mother lives in a stable home, Mother has had a stable job for four years, Mother attempts to foster communication between the parties and will continue to do so, and Mother served as the Child's primary caretaker for the first six years of the Child's life and has the ability and desire to serve as the Child's primary caretaker presently. N.T.,

6/22/16, at 15-18, 23-30. In contrast, the trial court heard evidence that Father had a period of unstable housing, Father did not promote communication between the parties, Father did not engage the Child in extracurricular activities, and Father did not serve as the Child's primary caretaker, but rather his ex-wife did. *Id.* at 27-31, 49, 54-57. As the record supports the trial court's findings, we find no abuse of discretion.

Father's fourth issue on appeal claims that because the transfer of primary physical custody from Father to Mother requires a relocation of the Child, the trial court should have considered the relocation factors provided in 23 Pa.C.S. § 5337, prior to changing custody. Father's Brief at 24.

The Custody Act prohibits a parent from relocating unless a trial court approves the proposed relocation or all individuals who have custody rights to the child consent to the proposed location. 23 Pa.C.S. § 5337(b). In determining whether to grant a proposed relocation, a trial court must consider all of the Section 5337(h) relocation factors to determine a disposition which is in the child's best interests. 23 Pa.C.S. § 5337(h).[3]

_____

[3] 23 Pa.C.S. § 5337(h) directs the court to consider the following factors, "giving weighted consideration to those factors which affect the safety of the child:"

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical,

This Court has concluded that, in a custody case "where neither Mother nor Father is relocating and only the children stand to move to a **significantly distant location**, the relocation provisions of the Child Custody Act, 23 Pa.C.S.A. § 5337, are not *per se* triggered and the notice requirement of [S]ection 5337(c) does not apply." ***D.K. v. S.P.K.***, 102 A.3d 467, 468 (Pa. Super. 2014) (emphasis added). However, "in such cases, the trial court shall consider the relevant factors set forth in [S]ection 5337(h)

---

educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

insofar as they impact the final determination of the best interests of the children." *Id.*

Most relevant to this appeal, we noted in *D.K.* that "[s]everal of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of Section 5328(a)." *Id.* at 476-477. We opined that where a custody change involves a move of the Child to a significantly distant location, a trial court should consider "those relevant factors of Section 5337(h) that are not otherwise encompassed directly or implicitly by the Section 5328(a) factors pursuant to the catchall provision of Section 5328(a)(16)." *Id.* at 477. These factors include "the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2))[;] the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3))[;] and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7))." *Id.*

Father cites *D.K., supra,* to argue that in the instant case, although neither parent was relocating, the transfer of custody involved a relocation of the Child and, therefore, the trial court should have considered the relocation factors. In *D.K.*, the father lived in Pittsburgh, Pennsylvania while the mother lived in the State of North Carolina, over five hundred miles away. This Court determined that the parents were located in "significantly

distant location[s]" and that the court should consider relevant Section 5337 relocation factors. *Id.* at 477.

In ***S.J.S. v. M.J.S.***, 76 A.3d 541 (Pa. Super. 2013), Mother filed a request for relocation from Erie to Buckingham, 7½ hour away. Although there was no custody order in place at the time, Mother had primary physical custody of the two children, with father spending significant time with the children each week. Father objected to the relocation request, and filed a petition for shared custody. The parties then entered into a consent order sharing legal and physical custody, with Mother retaining primary physical custody. Following a trial on the relocation petition, the court denied Mother's request for relocation and entered a custody order allowing Mother to retain primary physical custody if she remained in Erie; but if she chose to relocate, Father would be awarded primary physical custody and the parties would arrange for Mother's partial custody periods.

On appeal, this Court observed that the trial court had properly applied a dual analysis of the statutory relocation and the custody factors, with a concentration on the relocation factors, "because it recognized that the custody arrangement was in dispute only in the event Mother chose to relocate." *Id*. at 550. We further observed that the court properly considered the impact the move would have on the children in light of their wide circle of friends, their academic success, and the significant impact the

change would have on the time the children would have with their father, who they had seen each week and weekend.

*S.J.S*. and *D.K.* are distinguishable from the instant case. Both *S.J.S.* and *D.K.* involved the children moving a significant distance from the other parent, *i.e.*, 7½ hours. Here, the change of custody would not change the distance the Child would travel, and has travelled, between parents. As the trial court observed when it concluded that the relocation factors are not applicable *per se*, "both parties … not only reside in Pennsylvania, but in the same region of Pennsylvania and approximately 1.5 hours from each other." Trial Court Supplemental Opinion, filed 8/24/16, at 6.

Notwithstanding the court's determination in the instant case that the relocation statute was not applicable because the Child would not be moving to a significantly distant location,[4] "in an abundance of caution," the court addressed the "three relocation factors identified as significant by the *D.K.* Court where the relocation statute does not apply, but a change in custody requires the child to move to a 'significantly distant location.'" Trial Court Op., at 5-7, citing *D.K.*, *supra* at 477; Pa.C.S. § 5337(h)(2), (3), and (7). In doing so, the court observed:

> **The age, developmental stage, needs of the child and the likely impact the child's change of residence will have on**

---

[4] The trial court first concluded that because Appellant did not raise the relocation factors prior to the filing of his Pa.R.A.P. 1925(b) statement, the issue is waived. **See** Trial Ct. Supplemental Op., dated 8/24/16, at 3-4.

> ***the child's physical, education and emotional development[.]***
>
> Mother made arrangements for the Child to attend a morning care program at her new elementary school that is run by the local YMCA. Further, Mother has expressed a willingness to fulfill the Child's desire to take part in extracurricular activities. While Father had little information regarding possible activities for the Child, Mother indicated that she had previously enrolled the Child in dance lessons and that she would like her to continue this activity. Considering the Child's young age, it is important that she live in an environment where her physical, educational, and emotional development is both supported and encouraged through available school and community activities.
>
> ***The feasibility of preserving the relationship between the other parent and the [C]hild[.]***
>
> Due to the fairly short distance between the parties' residences, the move to Mother's home in the Towanda area will not inhibit Father's ability to exercise significant and regular periods of physical custody.
>
> ***Whether the change in the [C]hild's residence will enhance the general quality of life for the [C]hild.***
>
> The Child was unable to identify any friends near Father's home, but indicated to this Court that she has a friend near Mother's home. Additionally, as explained previously, the Child has a strong interest in participating in school activities and Mother has expressed the willingness to fulfill that need.

Trial Court Supplemental Op., at 6-8.

We conclude that the trial court was not required to apply the relocation factors *per se* because the Child will not be moving to a "significantly distant location." Moreover, as recognized in **D.K.**, many of the relocation factors overlap with the custody factors. The trial court's explicit review of the three relocation factors highlighted in **D.K.** as

- 13 -

potentially separate from the custody factors, demonstrate that the trial court mindfully considered the Child's relocation and its impact on her best interests. The trial court's decision is supported by the record, and we find no abuse of discretion in its determination.

Father's fifth issue on appeal is that the trial court failed to consider "the past abuses of [Mother] in forcing the [C]hild to undergo unnecessary rape examinations and accusing [Father] of [a]buse." Father's Brief at 32. Father argues that the trial court should have taken judicial notice of various court orders and petitions in the Luzerne County Children and Youth Agency case.

Father contends that the trial court has an obligation to develop the record, if necessary, and cites **Lewis v. Lewis**, 406 A.2d 781 (Pa. Super. 1979) and **Tettis v. Boyum**, 463 A.2d 1056 (Pa. Super. 1983) to support this assertion.

**Lewis** and **Tettis** are legally and factually distinguishable. While Father avers in the instant case that the trial court failed to consider the family's **past** circumstances, both **Lewis** and **Tettis** involve trial courts that failed to inquire into a child's **present** circumstances.

In **Lewis**, this Court determined that the trial court erred when it rendered a custody decision after mother failed to appear to testify and the record was devoid of evidence regarding mother's current ability to care for

the child and evidence regarding the characteristics of mother's home. **Lewis, supra** at 241.

In **Tettis**, this Court stated that "all pertinent facts and circumstances surrounding the contesting parties must be fully explored and developed[,]" including the parties' character and ability to care for a child, the parties' home environment, and the parties' financial situation. **Tettis, supra** at 1064. Ultimately, this Court found that the parties had not presented adequate evidence about the "**present** capabilities of the parties to provide the child with a stable environment." **Id.** (emphasis added). **Tettis** and **Lewis** are inapposite to the instant case.

In custody disputes, this Court has discouraged a focus on the parties' past behavior, stating: "[c]ustody cannot reasonably be granted on the basis of a parent's unsettled past unless the past behavior has an on-going negative effect on the child's welfare. Moreover, the ability to care for the child is to be determined as of the time of the custody hearing." **Michael T.L. v. Marilyn J.L.**, 525 A.2d 414, 418 (Pa. Super. 1987) (citations omitted). Finally, "[i]n making its decision, the Trial Court must not dwell on matters buried in the past, but must concentrate only on those matters which affect the present and the future of the child." **Id.** (citation omitted).

Here, the trial court opined:

> Although the [c]ourt is aware of the earlier incident that caused the child to be removed from Mother's home when the child was six years old, there was no relevant testimony about that incident. The only testimony regarding the investigation was

Mother's assertion that she made only one call to Children and Youth Services and not repeated phone calls. The [c]ourt does not believe that matter would impact the child's current living situation.

Trial Court Custody Opinion at 7.

Father's argument that the trial court should have developed the record more regarding Mother's past behavior is unpersuasive. As discussed above, the trial court heard evidence about the parents' present ability to care for the Child and the record supports the trial court's conclusions. Additionally, the trial court heard testimony that Northern Tier Counseling discharged Mother from services and that Luzerne County Children and Youth has not been involved with the Family since 2013. N.T., 6/22/16, at 14-15. Moreover, Father testified that if Mother's custody were increased, he did not believe that the Child would be in any harm. *Id.* at 48. A review of the record reveals that it was adequately developed and that it supports the trial court's conclusions; thus, we find no abuse of discretion.

Father's sixth issue on appeal is that the trial court erred in granting primary physical custody to Mother "based on assumption of future events." Father's Brief at 31. Specifically, Father avers that it was improper for the trial court to conclude that Father is dependent upon his ex-wife for stability and to speculate that, if Father and his ex-wife, who are currently reconciled, should separate again, the "opportunity for the [C]hild to be without a proper home and/or be uprooted looms large." Trial Court Custody Opinion at 7.

The trial court did not err in considering the Child's future. As stated above, a trial court "must concentrate only on those matters which affect the present and the future of the child." **Michael T.L., supra** at 418. A review of the record reveals that the trial court based its determination on evidence that the Child and Father were transient between extended family members when Father separated from his ex-wife. N.T., 6/22/16, at 56-57.

Because the trial court properly considered the Child's future in its best interests analysis and the record supports the trial court's conclusion, we find no abuse of discretion.

Father's final issue on appeal is that the trial court abused its discretion in "failing to allow [Father] to present evidence at trial." Father's 1925(b) Statement at 2; Father's Brief at 30. We find this issue to be overly vague, and therefore, waived.

Rule 1925(b) requires an appellant to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). This Court may find waiver where a Rule 1925(b) Statement is too vague. **In re A.B.**, 63 A.3d 345, 350 (Pa. Super. 2013). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review . . . . [A 1925(b)] Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [1925(b)] Statement at all." **Id.** (internal quotation marks and citations omitted).

Here, the trial court was unable to address Father's issue, stating, "[w]ithout greater detail from [Father] regarding this alleged error . . . this [c]ourt is unable to elaborate further on this issue." Trial Court Supplemental Opinion at 8. Because this issue is overly vague, and the trial court was unable to address it, we find that Father has waived this issue on appeal.

A review of the record supports the trial court's findings and reveals that the trial court properly considered the Child's best interests when it granted Mother's Petition to Modify Custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2017